FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 FEB  6  AM 11 44

STEPHAN HARRIS, CLERK
CHEYENNE

Kelly Egan (WSB #7-4682)
Kelly Egan, LLC
P.O. Box 2927
Jackson, WY 83001
(307) 413-5355
kegan3300@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| Bruce L. Egan, | ) | |
| Richard A. Heise Sr., | ) | |
| Plaintiffs. | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-23-J |
| | ) | |
| Dice Partners, Inc., | ) | |
| Rome Consulting Inc., | ) | |
| Rome Partners, | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DEFAULT ON PROMISSORY NOTES AND BREACH OF CONTRACT

COME NOW, Plaintiffs Bruce L. Egan and Richard A. Heise Sr., by and through counsel Kelly Egan of Kelly Egan, LLC and respectfully submit this Complaint for Default on Promissory Notes and Breach Of Contract.

## JURISDICTION

This Court has jurisdiction over the parties under 28 USC §1332(a)(2) that states: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— citizens of a State and citizens or subjects of a foreign state".

The full extent of the damage to plaintiffs cannot be determined without discovery. However, plaintiffs made loans secured by promissory notes to defendant Dice Partners, Inc. of $600,000.00, which exceeds the sum of $75,000.

Plaintiffs Bruce L. Egan and Richard A. Heise, Sr. are U.S. citizens and reside in the state of Wyoming.

Dice Partners, Inc., is a company incorporated in the Republic of Panama.

Dice Partners, Inc. is believed to be the parent of the other defendant companies:
   a) Rome Consulting, Inc. is a company that may have been incorporated in the British Virgin Islands.
   b) Rome Partners is a business entity that may not be incorporated.

## BACKGROUND

1. Plaintiffs are investors in defendant Dice Partners, Inc., a Panamanian Company.
2. Several businesses operating under the "Rome" brand name, including defendants Rome Consulting Inc., Rome Partners and Rome Capital, are wholly owned subsidiaries/successor companies of Dice Partners, Inc.
3. The primary business of Dice Partners, Inc. is the operation of online casinos including romecasino.com and dicelandcasino.com.

4. The operations of Dice Partners, Inc. are governed by Articles of Incorporation.

5. Based on the most recent shareholder agreements, plaintiff Bruce Egan currently holds 31% ownership in Dice Partners, Inc. and plaintiff Richard A. Heise, Sr. owns 47%.

6. In February 2008 Dice Partners, Inc. issued a Subscription Agreement and Investment Representation including a company Business Plan Summary that was presented to plaintiffs in order to solicit investments.

7. The Business Plan Summary announced the company's intent to use the Internet domain name romecasino.com for its online gaming business and romepartners.com as an incentive program for marketing affiliates to drive Internet traffic to the romecasino.com web site. (Exhibit 1) The introduction states: "DICE's online presence will be launched under the "Rome" brand. The company has registered product specific domain names which will help drive traffic to its site."

8. In February 2008 the company web pages for the domains romecasino.com and romepartners.com were published on the Internet.

9. The company started taking paying customers in April 2008 via its website romecasino.com.

10. In October 2008 the Board of Directors of Dice Partners, Inc. issued a "Certificate of Corporate Resolution Authorizing Issue of Promissory Note and Warrant Agreement" whereby Mr. Heise and Mr. Egan would loan the company $200,000.00 each. The document states: "The Board determined that corporate earnings should be sufficient to pay back the loan(s) to the lender(s) according to the terms in the note(s) and that such repayment would not jeopardize the financial status of the corporation." (Exhibit 2)

11. On October 20, 2008 defendant Dice Partners, Inc. by and through its founder Jeremy Barnett, and with the approval of the Shareholders and Board of Directors,

executed and delivered to plaintiff Bruce L. Egan a promissory note in the amount of $200,000.00. (Exhibit 3)

12. Under the terms of the note, Mr. Egan loaned the company $200,000.00 and Dice Partners, Inc. agreed to repay the loan with interest thereon at the rate of fifteen percent per annum in installments beginning February 20, 2009.

13. On October 20, 2008 defendant Dice Partners, Inc. by and through its founder Jeremy Barnett, and with the approval of the Shareholders and Board of Directors, executed and delivered to plaintiff Richard A. Heise, Sr. a promissory note in the amount of $200,000.00. (Exhibit 4)

14. Under the terms of the note, Mr. Heise loaned the company $200,000.00 and Dice Partners, Inc. agreed to repay the loan with interest thereon at the rate of fifteen percent per annum in installments beginning February 20, 2009.

15. In April 2009 Dice Partners, Inc. issued a report under the names of the founders and the CEO: "Rome Casino - Year End Performance Summary (April 2008 - March 2009)". The very first page of the report touts the financial health and substantial growth of the company: "We grew our core casino average monthly offerings by an impressive **31%** in 2008-09. Our leading casino business was again one of the main drivers for Rome's revenue growth and our online brand, RomeCasino.com, had a successful year with Net Gaming revenues of **$7.37 million**." (Exhibit 5)

16. The strong growth in revenue, profit and players contained in the report was used by defendant Dice Partners Inc. to solicit additional loans from Messrs. Heise and Egan to fund future growth.

17. In July 2009 Rome Consulting Inc. executed a promissory note, signed by the company founder Jeremy Barnett, whereby Mr. Egan loaned the company $100,000.00 to fund continued operations and growth. (Exhibit 6)

18. Under the terms of the note, Mr. Egan loaned the company $100,000.00 and Dice

Partners, Inc. agreed to repay the loan with interest thereon at the rate of two percent per month until January 23, 2010.

19. In July 2009 Rome Consulting Inc. and Mr. Barnett executed a promissory note whereby Mr. Heise loaned $100,000.00 to the company to fund continued operations and growth. (Exhibit 7)

20. Under the terms of the note, Mr. Heise loaned the company $100,000.00 and Dice Partners, Inc. agreed to repay the loan with interest thereon at the rate of two percent per month until January 23, 2010.

21. Based upon company projections, etc. plaintiffs believe that the company has generated more than $12,000,000.00 of profit after expenses since opening for business in April 2008.

22. At no time have plaintiffs received any dividend or distribution of company profits or assets from Dice Partners, Inc. for their respective ownership therein.

23. Plaintiffs assert that, Joshua Cartu, acting outside his authority as CEO/former CEO, gave himself bonuses and other compensation in excess of amounts to which he was contractually entitled.

24. These actions did not comply with the Dice Partners, Inc. Articles of Organization and resulted in substantial damage to plaintiffs.

## COUNT 1: DEFAULT ON PROMISSORY NOTES

25. On October 20, 2008 defendant Dice Partners, Inc. by and through its founder Jeremy Barnett, and with the approval of the Shareholders and Board of Directors, executed and delivered to plaintiff Bruce L. Egan a promissory note in the amount of $200,000.00.

26. Under the terms of the note, Mr. Egan loaned the company $200,000.00 and Dice Partners, Inc. agreed to repay the loan with interest thereon at the rate of fifteen percent per annum in installments beginning February 20, 2009.

27. On October 20, 2008 defendant Dice Partners, Inc. by and through its founder
    Jeremy Barnett, and with the approval of the Shareholders and Board of Directors,
    executed and delivered to plaintiff Richard A. Heise, Sr. a promissory note in the
    amount of $200,000.00.

28. Under the terms of the note, Mr. Heise loaned the company $200,000.00 and Dice
    Partners, Inc. agreed to repay the loan with interest thereon at the rate of fifteen
    percent per annum in installments beginning February 20, 2009.

29. On July 22, 2009 defendant Rome Consulting Inc. by and through its founder,
    Jeremy Barnett, executed and delivered to plaintiff Egan a promissory note for
    $100,000.00.

30. Under the terms of the note Mr. Egan loaned the company $100,000.00 and Rome
    Consulting Inc. agreed to repay the loan with interest thereon at the rate of two
    percent per month until January 23, 2010.

31. On July 22, 2009 defendant Rome Consulting Inc. by and through its founder,
    Jeremy Barnett, executed and delivered to plaintiff Heise a promissory note for
    $100,000.00.

32. Under the terms of the note Mr. Heise loaned the company $100,000.00 and
    Rome Consulting Inc. agreed to repay the loan with interest thereon at the rate of
    two percent per month until January 23, 2010.

33. Mr. Barnett was duly authorized by a majority of the shareholders and the Board
    of Directors to enter into these agreements.  They are legal and binding
    documents that meet the requirements of a writing under the UCC.

34. Mr. Barnett's counsel drafted the Notes and reviewed their terms.

35. Plaintiffs fully performed their obligations under the promissory note terms.

36. Defendants breached their obligations under the promissory notes by defaulting
    on the repayment requirements.

37. Under the terms of the October 20, 2008, and July 22, 2009 Notes: "If any

payment of principal and interest is not paid by the Company within five (5) business days after the date on which such payment shall become due and payable under this Note ..... (each, an Event of Default), the Holder may, by giving written notice to the company, declare the unpaid principal amount hereof and all accrued and unpaid interest hereon to be immediately due and payable and upon such declaration, the unpaid principal amount hereof and all accrued and unpaid interest hereon shall be and become immediately due and payable.
Should the indebtedness represented by this Note or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceedings (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection upon the occurrence of an Event of Default, the Company agrees to pay, in addition to the principal and interest due and payable hereon, all costs of collection, including reasonable attorneys' fees."

38. Plaintiff Egan notified Mr. Barnett, as company representative, of the breach, and granted the company substantial opportunity to cure. No repayment was made to Mr. Egan by Dice Partners, Inc. on the $300,000.00 in promissory note principle.

39. Plaintiff Heise notified Mr. Barnett, as company representative, of the breach and granted the company substantial opportunity to cure. No repayment was made to Mr. Heise by Dice Partners, Inc. on the $300,000.00 in promissory note principle.

40. Defendants owe Plaintiff's a combined $600,000.00 in principle plus accrued interest and all costs of collection including reasonable attorneys fees.

## COUNT 2: BREACH OF CONTRACT

41. As shareholders, plaintiffs maintain that defendants breached their contractual obligation when funds were diverted to third parties to the detriment of shareholders.

42. It has been widely held that Articles of Organization serve four (4) essential purposes: 1) They bring the corporation "to life"; 2) They represent a contract between the corporation and the shareholders of the corporation; 3) They represent a contract between the corporation and the state; and 4) They put everyone on notice about the corporation's existence. The single act of filing the Articles of Organization establishes these four basic relationships.

43. On February 11, 2008 Dice Partners, Inc. filed amended Articles of Organization. This established a contract between the plaintiffs, as shareholders, and the corporation, including subsidiaries.

44. The Ninth Article states: "The manner of disposal of the rights and properties of the corporation, including powers to alienate, purchase, assign, transfer, waive, assess and mortgage, in whole and/or in part, enter into financial agreements, with regard to corporate properties and rights and offer securities in the name of the corporation to guarantee obligations of third parties, rests exclusively with the Company's shareholders."

45. The Twelfth Article states: "The corporation may distribute dividends from time to time whenever the shareholders and/or the Board of Directors shall so decide."

46. In February 2008 defendant Dice Partners, Inc. by and through its representative, Jeremy Barnett, executed and delivered to plaintiff Richard A. Heise, Sr. a Subscription Agreement and Investment Representation whereby Dice Partners, Inc. sold to Mr. Heise 1,925,000 shares of Dice Partners, Inc. for the sum of $250,000.00. (Exhibit 8)

47. In February 2008 Defendant Dice Partners, Inc. by and through its representative, Jeremy Barnett, executed and delivered to plaintiff Bruce L. Egan a Subscription Agreement and Investment Representation whereby Mr. Barnett sold to Mr. Egan 770,000 common shares of Dice Partners, Inc. for the sum of $100,000.00. (Exhibit 9)

48. Defendants Dice Partners, Inc. and Mr. Barnett on May 29, 2008 executed and delivered to plaintiff Richard A. Heise, Sr. an amended and restated Subscription Agreement and Investment Representation whereby Mr. Barnett sold to Mr. Heise an additional 1,925,000 shares of Dice Partners, Inc. for the sum of $100,000.00. This makes Mr. Heise's total investment $350,000.00 and 3,850,000 shares. (Exhibit 10)

49. At no time have plaintiffs received any dividend or distribution of company profits or assets from Dice Partners, Inc. for their respective ownership therein.

50. At no time were Plaintiffs asked to approve, nor did they approve, a distribution of profits or sale of assets to non-shareholder third parties, but a company employee Joshua Cartu, who is asserting control over certain assets of the company has publicly described a lifestyle funded by corporate resources, that far exceeds his annual salary.

51. Based upon projections of players and profits, it is believed that the amount of the diverted assets and/or profits exceeds $12,000,000.00.

52. Plaintiffs assert that defendants committed a breach of contract when company assets and/or profits were distributed to third parties without the requisite authority and consent of shareholders as required by the Articles of Organization.

53. Plaintiffs assert that these actions were taken to their detriment.

54. Plaintiffs seek relief via a third party review of the financial records of the Defendant Companies to determine the full scope of the unauthorized distributions.

55. Plaintiffs also seek a return of any distributions of company assets, profits and dividends that were not duly authorized by shareholders from April 2008 to the present.

56. Finally, should it be authorized, a redistribution of the unauthorized distributions should be made to shareholders.

## CONCLUSION

WHEREFORE, Plaintiff prays the Court find and order relief as follows:

1. Defendants are guilty of defaulting on repayment of promissory notes in the amount of $600,000.00 and should be held jointly and severally liable for repayment.

   a) Plaintiff Egan should be awarded the principal sum of $300,000.00, plus interest, and costs of collection including reasonable attorneys fees;

   b) Plaintiff Heise should be awarded the principal sum of $300,000.00, plus interest, and costs of collection including reasonable attorneys fees.

2. Defendants are guilty of breaching the Articles of Organization in that senior managers distributed corporate assets or profits in a manner that was not authorized:

   a) Defendants should be ordered to provide financial records of their businesses from April 2008 to the present so that Plaintiffs can determine the full scope of the unauthorized distributions; and

   b) Defendants should be ordered to return any corporate assets, profits and dividends that were not duly authorized by shareholders from April 2008 to the present.

Respectfully submitted this 4th day of February 2013.

Kelly Egan (WSB 7-4682)
Kelly Egan, LLC
P.O. Box 2927
Jackson, WY 83001
(307) 413-5355
kegan3300@gmail.com
Attorney for Plaintiffs

# Exhibit 1



# DISCREET INTERNATIONAL CASINO ENTERTAINMENT

Business Plan Summary **I Feb 2008**

Contact

**Jeremy Barnett**
Founder
e: jeremyb@romecasino.com
t: +1 949.936.2123 / c: +1 949.235.5051

## I. Introduction

Online gambling is the betting on sports or casino games via the medium of the Internet. The term is also often inclusive of phone sports betting. Real online gaming, however, consists of not only betting but playing and collecting money through the Internet. The nature of betting in its entirety typically includes online sports bets, casino style games, lotteries, keno and even bingo. A most recent trend on online sports betting is multi-player gaming featuring playing against real people across the globe.

**Discreet International Casino Entertainment** (DICE) aspires to be a global leader in the online gambling industry by offering its customers a convenient and secure channel for online gambling activities through the establishment of a lifestyle brand focused on high standards of responsibility and compliance. With the proliferation of online casinos worldwide, especially those established and operated outside of the United States, there has been a general trend towards low-quality, low-service online casinos. DICE seeks to leverage marketplace trends to fulfill both businesses' and consumers' unmet needs.

DICE's online presence will be launched under the "Rome" brand. The company has registered product specific domain names which will help drive traffic to its site. The company will primarily generate revenue through three sources: new player sign-ups, affiliates and advertising / licensing. DICE has partnered with Innovative Marketing, a reputed company which specializes in mass marketing nationally and internationally, to assist in the growth and retention of player base.

The technology platform for DICE's business has been developed by Total E Soft Limited (TES), a leading provider of casino software, which will present consumers with the highest level of online gambling entertainment through the maximization of multi-platform gambling channels in a safe, fun and integrated environment. DICE will strive to achieve critical mass on a global scale and continued growth in revenue base through investment in product / technology development, innovative marketing and customer service.

## Exhibit 1

p.3

Below: Page 7 of February 2008 Business Plan Summary presents "Rome" family of companies, including romecasino.com.

## DICE Product / Brand Categories









**Poker**
- RomePoker.com
- RomePokerRoom.com
- RomeOnlinePoker.com
- RomeCardRoom.com
- RomeChips.com
- PokeratRome.com

**Casino**
- RomeCasino.com
- RomeCasino.net
- RomeOnlineCasino.com
- OnlineCasinoRome.com

**Sports Book**
- RomeSportsbook.com
- Romebet.com
- Romewagering.com
- RomeSportsBetting.com

- **10+ Game categories including card, table and specialty games, video and classic slots and variety of video poker and progressive jackpot games**

- **60+ Games under these categories to appeal to a large demographic and customer base**

- **Targeting huge EU customer base**

- **Categories will include all major sporting events, seasonal games, leagues etc covering a variety of sports**

DICE Executive Summary | **Confidential** 7 | P a g e

# Exhibit 2



### CERTIFICATE OF CORPORATE RESOLUTION
### AUTHORIZING ISSUE OF PROMISSORY NOTE AND WARRANT AGREEMENT

I Jeremy Barnett President of DICE Partners Inc organized and existing under the laws of Republic of Panama and having its principal place of business at Suite 1 A No 5 Calle Eusebio A Morales El Cangrejo, Panama City Panama hereby certify that the following is a true copy of a resolution adopted by the Board of Directors of the Corporation at a meeting convened and held on _____ _____ _____ _____ _____ _____ _____ _____ at which a quorum was present and voting throughout and that such resolution is now in full force and effect and is in accordance with the provisions of the charter and by laws of the Corporation

RESOLVED That it is in the best interests of the Corporation to borrow the following amount(s) from the following individuals

| Amount | Name of Lender |
|--------|----------------|
| $200 000 | Mr Richard Heise |
| $200 000 | Mr Bruce Egan |

The terms of loan(s) were included in a Promissory Note and Detached Warrant Purchase Agreement presented for approval at the meeting The board determined that these terms were reasonable The board also determined that corporate earnings should be sufficient to pay back the loan(s) to the lender(s) according to the terms in the note(s) and that such repayment would not jeopardize the financial status of the corporation

Therefore the board approved the terms of Promissory Note and Detached Warrant Purchase Agreement and directed the President to sign on behalf of the corporation The secretary was directed to attach a copy of Promissory Note and Detached Warrant Purchase Agreement signed by the President to this resolution and to place the resolution and attachment(s) in the corporate records book

RESOLVED FURTHER That the Board of Directors are hereby authorized and directed to certify to any interested party that this resolution has been duly adopted is in full force and effect and is in accordance with the provisions of the charter and by laws of the Corporation

I further certify that this Corporation is duly organized and existing and has the power to take the action called for by the foregoing resolution

DIRECTORS

President                          Date

Vice President                     Date

Secretary                          Date

Treasurer                          Date

# Exhibit 3

p.1



## PROMISSORY NOTE AND DETACHED WARRANT PURCHASE AGREEMENT

This Note and Warrant Purchase Agreement, dated as of October 20, 2008, (this "AGREEMENT") is entered into by and among DICE Partners Inc., (the "COMPANY") and Bruce Egan, (the "INVESTOR"). The parties, intending to be legally bound, hereby agree as follows:

### 1. ISSUANCE OF PROMISSORY NOTES

(a) Investor agrees to lend for two years to Company from time to time prior to October 30, 2008 as requested by Company in accordance with paragraph (c), advances in an aggregate amount not to exceed $200,000.00 and, as additional consideration, investor will receive a Detached Warrant to purchase 4% of the then authorized shares of Common Stock of Company which is exercisable at any time for three years (ref. EXHIBIT B). Payment of the Note is personally guaranteed by Jeremy Barnett and Lauren Danielle Barnett, husband and wife. (ref. EXHIBIT C, Guarantee of Payment)

(b) Each advance by Investor to Company shall be considered a promissory note on the terms and conditions specified in the form of the promissory note attached hereto as EXHIBIT A (individually a "Note", and collectively, the "Notes").

(c) To obtain an advance, Company must provide Investor with an unsigned Note specifying the dollar amount of the advance requested at least one business day prior to the date stipulated on the Note. The issuance of the corresponding Note will occur against receipt by Company of the corresponding advance and shall take place at the offices of Company on the date stipulated on the Note or such other time and place as both Company and Investor may determine; PROVIDED, HOWEVER, that no closing shall occur on a date later than October 1, 2010.

(d) Company acknowledges receipt of $200,000 by Investor on Oct 20ᵗʰ, 2008 in anticipation of this Agreement and agrees to issue Investor a Note in the principal amount of $200,000.

2. WARRANT. In consideration of Investor's commitment to advance up to an aggregate principal amount of $200,000.00 to Company, Company shall issue a warrant to Investor in the form attached hereto as EXHIBIT B (the "Warrant").

3. REPRESENTATIONS AND WARRANTIES OF COMPANY. Company hereby represents and warrants to Investor that, the statements contained in the following paragraphs of this Section 3 are all true and correct as of the Closing Date:

# Exhibit 3



(a) ORGANIZATION AND STANDING: ARTICLES AND BYLAWS. Company is a corporation duly organized, validly existing and in good standing and has all requisite corporate power and authority to carry on its business as now conducted.

(b) CORPORATE POWER. Company has all requisite legal and corporate power to enter into, execute and deliver this Agreement, the Notes and the Warrant. This Agreement, and upon issuance, the Notes and the Warrant will be valid and binding obligations of Company, enforceable in accordance with their terms, except as the same may be limited by bankruptcy, insolvency, moratorium, and other laws of general application affecting the enforcement of creditors' rights.

(c) AUTHORIZATION.

(i) CORPORATE ACTION. All corporate and legal action on the part of Company, its officers, directors and shareholders necessary for the execution and delivery of this Agreement, the Notes and the Warrant, the sale and issuance of the Notes, the Warrant and the shares issuable upon conversion of the Notes and exercise of the Warrant and the performance of Company's obligations hereunder and under the Notes and the Warrant have been taken.

(ii) VALID ISSUANCE. The Notes and the Warrant, and shares of Common Stock issued upon conversion or exercise of the Notes and the Warrant (collectively, the "SECURITIES"), when issued in compliance with the provisions of this Agreement, the Notes, and the Warrant will be validly issued and will be free of any liens or encumbrances, provided, however, that the Securities may be subject to restrictions on transfer under state and/or federal securities laws as set forth herein, and as may be required by future changes in such laws.

4. REPRESENTATIONS AND WARRANTIES BY INVESTOR. Investor represents and warrants to Company as of the Closing Date as follows:

(a) INVESTMENT INTENT: AUTHORITY. This Agreement is made with Investor in reliance upon Investor's representation to Company, evidenced by Investor's execution of this Agreement, that Investor is acquiring the Notes and the Warrant for investment for Investor's own account, not as nominee or agent, for investment and not with a view to, or for resale in connection with, any distribution or public offering thereof within the meaning of the Securities Act of 1933, as amended, (the "SECURITIES ACT"). Investor has the full right, power, authority and capacity to enter into and perform this Agreement and the Agreement will constitute a valid and binding obligation upon Investor, except as the same may be limited by bankruptcy, insolvency, moratorium, and other laws of general application affecting the enforcement of creditors' rights.

(b) SECURITIES NOT REGISTERED. Investor understands and acknowledges that the offering of the Securities pursuant to this Agreement will not be registered under the Securities Act on the grounds that the offering and sale of securities contemplated by this Agreement are

# Exhibit 3



exempt from registration under the Securities Act and that Company's reliance upon such exemptions is predicated upon Investor's representations set forth in this Agreement. Investor acknowledges and understands that resale of the Securities may be restricted indefinitely unless the Securities are subsequently registered under the Securities Act or an exemption from such registration and such qualification is available. Investor acknowledges that Company is under no obligation to effect any registration with respect to the Securities or to file for or comply with any exemption from registration.

(c)     JURISDICTION. Company and Investor agree that for purposes of any dispute or litigation arising from this agreement the Courts of the state of Nevada have jurisdiction to hear and decide the case, and Company and Investor further agree no attempt will be made by either party to transfer jurisdiction outside of the United States.

(d)     LOCK-UP AND TRANSFER RESTRICTIONS.  Investor covenants that in no event will it sell, transfer or otherwise dispose of any of the Securities prior to the third anniversary of the Closing Date. After the second anniversary of the Closing Date, Investor covenants that in no event will it sell, transfer or otherwise dispose of any of the Securities other than in conjunction with an effective registration statement for the Securities under the Securities Act or pursuant to an exemption therefrom, or in compliance with Rule 144 promulgated under the Securities Act or to a person related to or an entity affiliated with said Investor and other than in compliance with the applicable securities regulation laws of any state.

(e)     KNOWLEDGE AND EXPERIENCE. Investor (i) has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of Investor's prospective investment in the Securities; (ii) has the ability to bear the economic risks of Investor's prospective investment; (iii) has had all questions which have been asked by Investor satisfactorily answered by Company; and (iv) has not been offered the Securities by any form of advertisement, article, notice or other communication published in any newspaper, magazine, or similar media or broadcast over television or radio, or any seminar or meeting whose attendees have been invited by any such media. Investor represents and warrants that it is an "accredited investor" within the meaning of Rule 501 of Regulation D of the Securities Act.

5. MISCELLANEOUS.

(a) WAIVERS AND AMENDMENTS. Any provision of this Agreement may be amended, waived or modified upon the written consent of Company and Investor.

(b) GOVERNING LAW. This Agreement, the Notes and the Warrant and all actions arising out of or in connection with this Agreement, the Notes and the Warrant shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to the conflicts of law provisions of the State of Nevada or of any other state.



# Exhibit 3



(c) ENTIRE AGREEMENT. This Agreement together with the exhibits attached hereto constitutes the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof.

(d) SURVIVAL. The representations, warranties, covenants and agreements made herein shall survive the execution and delivery of this Agreement.

(e) NOTICES, ETC. Any notice, request or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given (i) upon receipt if personally delivered, (ii) three (3) days after being mailed by registered or certified mail, postage prepaid, or (iii) one day after being sent by recognized overnight courier or by facsimile, if to Investor, PO Box 2927, Jackson WY 83001 or at such other address or number as Investor shall have furnished to Company in writing, or if to Company, 8238 W. Charleston Blvd., Las Vegas, NV 89117 or at such other address or number as Company shall have furnished to Investor in writing.

(g) VALIDITY. If any provision of this Agreement, the Notes or the Warrant shall be judicially determined to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(h) COUNTERPARTS. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall be deemed to constitute one instrument.

(i) ASSIGNMENT. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

THIS SPACE LEFT BLANK

# Exhibit 3

p.5



IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date and year first written above.

COMPANY:

DICE Partners, Inc.

By: _Joy Hall Jerry Burst at 20 ly, 2008_

Its: _Founder_

INVESTOR:

By: _Bruce Egan_  10-21-08

Name: _BRUCE EGAN_

Address: _Box 2927, Jackson WY 83001_

Tel: _307  413-2782_

Email: _began@wyoming.com_

# Exhibit 3



### Exhibit A

### 15% Promissory Note

Maximum Amount: $200,000.00

Guarantors: Jeremy Barnett and Lauren Danille Barnett (Refer Exhibit C)

FOR VALUE RECEIVED, DICE Partners, Inc., an International Business Corporation organized under the laws of the Republic of Panama (the "Company"), agrees to issue to Holder of the Note a Warrant granting an option to purchase four percent (4%) of DICE Partners, Inc. authorized Common Shares and hereby promises to make quarterly payments of principal and 15% interest per annum to the order of Bruce Egan (Holder).

The Holder shall have the right, exercisable at his option at any time from the date of execution of the Note until the third anniversary of the execution date to purchase 4% of then authorized shares of Common Stock for $200,000.00. (ref. Exhibit B for terms of Warrant)

The term of the Note is two years (eight quarters) from the date of this agreement. Principal will be fully amortized on the date of the second anniversary of the execution of this agreement at which time all principal and accrued interest is due.

PAYMENT SCHEDULE:    Quarterly payments of principal and interest will be in arrears; the first payment is due four months after the receipt of funds by the Company and the first payment amount will include amortized principal and four months interest. Payment of principal will be amortized quarterly for the amount of calendar quarters remaining in the term. Subsequent payments will be due three months (one quarter) after the first payment and the payments will cover three months interest on outstanding balances plus amortized principal.

For example, assuming Company borrows $200,000.00 on October 20, 2008, the first payment of principal and interest of $29,486.64 is due on February 20, 2009 and all subsequent payments are quarterly until the end of the term. Exhibit D presents the amortization schedule.

# Exhibit 3



EVENT OF DEFAULT:     If any payment of principal and interest is not paid by the Company within five (5) business days after the date on which such payment shall become due and payable under this Note or upon the bankruptcy or receivership of the Company (each, an "Event of Default"), the Holder may, by giving written notice to the Company, declare the unpaid principal amount hereof and all accrued and unpaid interest hereon to be immediately due and payable and upon such declaration, the unpaid principal amount hereof and all accrued and unpaid interest hereon shall be and become immediately due and payable.

Should the indebtedness represented by this Note or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceedings (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection upon the occurrence of an Event of Default, the Company agrees to pay, in addition to the principal and interest due and payable hereon, all costs of collection, including reasonable attorneys' fees.

This Note principal and accrued interest may be prepaid, at the option for the Company, in whole at any time or in part from time to time, at any time prior to the second anniversary of this agreement without premium or penalty.

This note is transferable in the manner authorized by law. Upon surrender of this Note for transfer, accompanied by a written instrument of transfer in form satisfactory to the Company, a new Note or Notes, for all like aggregate principal amount, will be issued to the transferee.

Prior to the transfer of this Note, the Company may deem and treat the Holder hereof as the absolute owner hereof (whether or not this Note shall be overdue) for the purpose of receiving payment of or on account of the principal hereof and interest hereon, and for all other purposes, and the Company shall not be affected by any notice to the contrary.

Except as expressly provided for herein, the Company hereby waives presentment, demand, notice of demand, protest, notice of protest and notice of dishonor and any other notice required to be given by law in connection with the deliver acceptance, performance, default or enforcement of this Note.

Except as expressly allowed by EXHIBIT C, no recourse shall be had for the payment of the principal of or the interest on this Note, or for any claim based hereon, or otherwise in respect hereof against any incorporator, shareholder, officer or director, as such, past, present or future, of the Company or of any successor corporation, whether by virtue of any constitution, statute or rule of law or by the enforcement of any assessment or by any legal or equitable proceeding or otherwise, all such liability being, by the acceptance hereof and as part of the consideration for the issue hereof, expressly waived and released. This Note shall be governed by and construed in accordance with the laws of the State of Nevada.

# Exhibit 3



IN WITNESS WHEREOF, DICE Partners, Inc. has caused this Promissory Note and Warrant to be signed by its Founder on the date first above written.

COMPANY:

DICE Partners, Inc.

By: _~~Jay Hill~~_ /Terry Kurrat  Oct 20, 2008

Its: _Founder_

INVESTOR:

By: _Bruce Egan_  10-21-08

Name: _BRUCE EGAN_

Address: _BOX 2927, JACKSON WY 83001_

Tel: _307 413-2782_

Email: _____



# PROMISSORY NOTE AND DETACHED WARRANT PURCHASE AGREEMENT

This Note and Warrant Purchase Agreement, dated as of October 20, 2008, (this "AGREEMENT") is entered into by and among PIE Partners Inc. (the "COMPANY") and Richard V. Heise (the "INVESTOR"). The parties, intending to be legally bound, hereby agree as follows:

## 1. ISSUANCE OF PROMISSORY NOTES

(a) Investor agrees to lend for two years from time to time prior to October 31, 2008 as requested by Company in accordance with paragraph (c), advances in an aggregate amount not to exceed $200,000.00 and, as additional consideration, investor will receive a Detached Warrant to purchase 4% of the then authorized shares of common Stock of Company which is exercisable at any time for three years (see EXHIBIT B). Payment of the Note personally guaranteed by Jeremy Harned and Lauren Danielle Harned, husband and wife (see EXHIBIT C Guarantee of Payment).

(b) Each advance by Investor to Company shall be considered a promissory note or the terms and conditions specified in the form of the promissory note attached hereto as EXHIBIT A (individually, a "Note", and collectively, the "Notes").

(c) To obtain an advance, Company must provide Investor with an instruction note specifying the dollar amount of the advance requested at least one business day prior to the date stipulated on the Note. The issuance of the corresponding Note will occur against receipt by Company of the corresponding advance and shall take place at the offices of Company on that date stipulated on the Note or such other time and place as both Company and Investor may determine; PROVIDED, HOWEVER, that no closing shall occur on a date later than October 2010.

## 2. COVENANTS

(d) Company acknowledges receipt of $100,000 advance by Investor on 20 Oct 2008.

## 3. REPRESENTATIONS AND WARRANTIES OF COMPANY. COMPANY hereby represents and warrants to Investor that, the statements contained in the following paragraphs of this Section 3 are all true and correct as of the Closing Date

2. WARRANT. In consideration of Investor's commitment to advance up to an aggregate principal amount of $200,000.00 to Company, Company shall issue a warrant to Investor in the form attached hereto as EXHIBIT B (the "Warrant").

Exhibit 4

p.1

# Exhibit 4



(a) ORGANIZATION AND STANDING; ARTICLES AND BYLAWS. Company is a corporation duly organized, validly existing and in good standing and has all requisite corporate power and authority to carry on its business as now conducted.

(b) CORPORATE POWER. Company has all requisite legal and corporate power to enter into, execute and deliver this Agreement, the Notes and the Warrant. This Agreement, and upon issuance, the Notes and the Warrant will be valid and binding obligations of Company enforceable in accordance with their terms, except as the same may be limited by bankruptcy, insolvency, moratorium, and other laws of general application affecting the enforcement of creditors' rights.

(c) AUTHORIZATION.

(i) CORPORATE ACTION. All corporate and legal action on the part of Company, its officers, directors and shareholders necessary for the execution and delivery of this Agreement, the Notes and the Warrant, the sale and issuance of the Notes, the Warrant and the shares issuable upon conversion of the Notes and exercise of the Warrant and the performance of Company's obligations hereunder and under the Notes and the Warrant have been taken.

(ii) VALID ISSUANCE. The Notes and the Warrant, and shares of Common Stock issued upon conversion or exercise of the Notes and the Warrant (collectively, the "SECURITIES"), when issued in compliance with the provisions of this Agreement, the Notes, and the Warrant will be validly issued and will be free of any liens or encumbrances; provided, however, that the Securities may be subject to restrictions on transfer under state and or federal securities laws as set forth herein, and as may be required by future changes in such laws.

4. REPRESENTATIONS AND WARRANTIES BY INVESTOR. Investor represents and warrants to Company as of the Closing Date as follows:

(a) INVESTMENT INTENT; AUTHORITY. This Agreement is made with Investor in reliance upon Investor's representation to Company, evidenced by Investor's execution of this Agreement, that Investor is acquiring the Notes and the Warrant for investment for Investor's own account, not as nominee or agent, for investment and not with a view to, or for resale in connection with, any distribution or public offering thereof within the meaning of the Securities Act of 1933, as amended, (the "SECURITIES ACT"). Investor has the full right, power, authority and capacity to enter into and perform this Agreement and the Agreement will constitute a valid and binding obligation upon Investor, except as the same may be limited by bankruptcy, insolvency, moratorium, and other laws of general application affecting the enforcement of creditors' rights.

(b) SECURITIES NOT REGISTERED. Investor understands and acknowledges that the offering of the Securities pursuant to this Agreement will not be registered under the Securities Act on the grounds that the offering and sale of securities contemplated by this Agreement are

DLI Partners Inc - Promissory Note & Warrant Purchase Agreement - Confidential



# Exhibit 4

exempt from registration under the Securities Act and that Company's reliance upon such exemptions is predicated upon Investor's representations set forth in this Agreement. Investor acknowledges and understands that resale of the Securities may be restricted indefinitely unless the Securities are subsequently registered under the Securities Act or an exemption from such registration and such qualification is available. Investor acknowledges that Company is under no obligation to effect any registration with respect to the Securities or to file for or comply with any exemption from registration.

(c) JURISDICTION. Company and Investor agree that for purposes of any dispute or litigation arising from this agreement the Courts of the state of Nevada have jurisdiction to hear and decide the case, and Company and Investor further agree no attempt will be made by either party to transfer jurisdiction outside of the United States.

(d) LOCK-UP AND TRANSFER RESTRICTIONS. Investor covenants that in no event will it sell, transfer or otherwise dispose of any of the Securities prior to the third anniversary of the Closing Date. After the second anniversary of the Closing Date, Investor covenants that in no event will it sell, transfer or otherwise dispose of any of the Securities other than in conjunction with an effective registration statement for the Securities under the Securities Act or pursuant to an exemption therefrom, or in compliance with Rule 144 promulgated under the Securities Act or to a person related to or an entity affiliated with said Investor and other than in compliance with the applicable securities regulation laws of any state.

(e) KNOWLEDGE AND EXPERIENCE. Investor (i) has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of Investor's prospective investment in the Securities, (ii) has the ability to bear the economic risks of Investor's prospective investment, (iii) has had all questions which have been asked by Investor satisfactorily answered by Company, and (iv) has not been offered the Securities by any form of advertisement, article, notice or other communication published in any newspaper, magazine, or similar media or broadcast over television or radio, or any seminar or meeting whose attendees have been invited by any such media. Investor represents and warrants that it is an "accredited investor" within the meaning of Rule 501 of Regulation D of the Securities Act.

5. MISCELLANEOUS

(a) WAIVERS AND AMENDMENTS. Any provision of this Agreement may be amended, waived or modified upon the written consent of Company and Investor.

(b) GOVERNING LAW. This Agreement, the Notes and the Warrant and all actions arising out of or in connection with this Agreement, the Notes and the Warrant shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to the conflicts of law provisions of the State of Nevada or of any other state.

An

# Exhibit 4



(c) ENTIRE AGREEMENT. This Agreement together with the exhibits attached hereto constitutes the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof.

(d) SURVIVAL. The representations, warranties, covenants and agreements made herein shall survive the execution and delivery of this Agreement.

(e) NOTICES, ETC. Any notice, request or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given (i) upon receipt if personally delivered, (ii) three (3) days after being mailed by registered or certified mail, postage prepaid, or (iii) one day after being sent by recognized overnight courier or by facsimile, if to Investor 5317 West Collum Avenue, Chicago, IL or at such other address or number as Investor shall have furnished to Company in writing, or if to Company, 8238 W. Charleston Blvd., Las Vegas, NV 89117 or at such other address or number as Company shall have furnished to Investor in writing.

(g) VALIDITY. If any provision of this Agreement, the Notes or the Warrant shall be judicially determined to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(h) COUNTERPARTS. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall be deemed to constitute one instrument.

(i) ASSIGNMENT. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

THIS SPACE LEFT BLANK

# Exhibit 4



IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date and year first written above.

COMPANY

DICE Partners, Inc.

By  Jeeny Barnett, *Jeff Faff* 2007

Its  FOUNDER

INVESTOR

By

Name  RICHARD .... EISE, Sr
Address

Tel

Email

# Exhibit 4



**Exhibit A**

**15% Promissory Note**

Maximum Amount  $200,000.00

Guarantors: Jeremy Barnett and Lauren Danille Barnett (Refer Exhibit C)

FOR VALUE RECEIVED, DICE Partners, Inc., an International Business Corporation organized under the laws of the Republic of Panama (the "Company"), agrees to issue to Holder of the Note a Warrant granting an option to purchase four percent (4%) of DICE Partners, Inc. authorized Common Shares and hereby promises to make quarterly payments of principal and 15% interest per annum to the order of Richard A. Heise (Holder)

The Holder shall have the right, exercisable at his option at any time from the date of execution of the Note until the third anniversary of the execution date to purchase 4% of then authorized shares of Common Stock for $200,000.00 (ref. Exhibit B for terms of Warrant)

The term of the Note is two years (eight quarters) from the date of this agreement. Principal will be fully amortized on the date of the second anniversary of the execution of this agreement at which time all principal and accrued interest is due.

PAYMENT SCHEDULE — Quarterly payments of principal and interest will be in arrears, the first payment is due four months after the receipt of funds by the Company and the first payment amount will include amortized principal and four months interest. Payment of principal will be amortized quarterly for the amount of calendar quarters remaining in the term. Subsequent payments will be due three months (one quarter) after the first payment and the payments will cover three months interest on outstanding balances plus amortized principal.

For example, assuming Company borrows $200,000.00 on October 20, 2008, the first payment of principal and interest of $29,486.64 is due on February 20, 2009 and all subsequent payments are quarterly until the end of the term. Exhibit D presents the amortization schedule.

DICE Partners Inc. Promissory Note & Warrant Purchase Agreement  Confidential

# Exhibit 4



EVENT OF DEFAULT —— If any payment of principal and interest is not paid by the Company within five (5) business days after the date on which such payment shall become due and payable under this Note or upon the bankruptcy or receivership of the Company (each an "Event of Default"), the Holder may, by giving written notice to the Company, declare the unpaid principal amount hereof and all accrued and unpaid interest hereon to be immediately due, and payable and upon such declaration, the unpaid principal amount hereof and all accrued and unpaid interest hereon shall be and become immediately due and payable.

Should the indebtedness represented by this Note or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceedings (whether at the trial or appellate levels, or should this Note be placed in the hands of attorneys for collection upon the occurrence of an Event of Default, the Company agrees to pay, in addition to the principal and interest due and payable hereon, all costs of collection including reasonable attorneys' fees.

This Note principal and accrued interest may be prepaid, at the option for the Company, in whole at any time or in part from time to time, at any time prior to the second anniversary of this agreement without premium or penalty.

This note is transferable in the manner authorized by law. Upon surrender of this Note for transfer, accompanied by a written instrument of transfer in form satisfactory to the Company, a new Note or Notes, for all like aggregate principal amount, will be issued to the transferee.

Prior to the transfer of this Note, the Company may deem and treat the Holder hereof as the absolute owner hereof (whether or not this Note shall be overdue) for the purpose of receiving payment of or on account of the principal hereof and interest hereon, and for all other purposes, and the Company shall not be affected by any notice to the contrary.

Except as expressly provided for herein, the Company hereby waives presentment, demand, notice of demand, protest, notice of protest and notice of dishonor and any other notice required to be given by law in connection with the deliver, acceptance, performance, default or enforcement of this Note.

Except as expressly allowed by EXHIBIT C, no recourse shall be had for the payment of the principal of or the interest on this Note, or for any claim based hereon, or otherwise in respect hereof against any incorporator, shareholder, officer or director, as such, past, present or future of the Company or of any successor corporation, whether by virtue of any constitution, statute or rule of law or by the enforcement of any assessment or by any legal or equitable proceeding or otherwise, all such liability being, by the acceptance hereof and as part of the consideration for the issue hereof, expressly waived and released. This Note shall be governed by and construed in accordance with the laws of the State of Nevada.

BICE Partners Inc. - Promissory Note & Warrant Purchase Agreement. Confidential



# Exhibit 4



IN WITNESS WHEREOF, DICE Partners, Inc. has caused this Promissory Note and Warrant to be signed by its Founder on the date first above written.

COMPANY

DICE Partners, Inc.

By: _Greg Scott_   Jerry Brandt

Its: FOUNDER

INVESTOR

By: _signature_

Name: RICHARD or LOUISE, SH

Address:   5317 W. __ G __ A

Tel: _____

Email: _____

