IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 FEB 2 PM 11 25

STEPHAN HARRIS, CLERK
CHEYENNE

|  |  |
|---|---|
| BRUCE L. EGAN AND RICHARD A. HEISE, SR., PLAINTIFFS, <br><br> v. <br><br> DICE PARTNERS, INC. ET AL., DEFENDANTS. | CASE NO. 2:13–CV–00023–ABJ |

---

## OPINION, ORDER, AND JUDGMENT
## ON PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

---

This matter comes before the Court on Plaintiffs' *Motion for Default Judgment.* Doc. 34. Having considered the pleadings, the applicable law, the written submissions, materials offered, and Plaintiffs' evidence and arguments presented during the default judgment hearing, the Court FINDS and ORDERS as follows:

### INTRODUCTION

This case is about Plaintiffs' ventures into online gambling through a company called Dice Partners, Inc. (Dice). Plaintiffs make the following claims against Dice: (1) Dice defaulted on each Plaintiff's promissory note; (2) Dice breached its contract by diverting funds to third parties to the detriment of shareholders; (3) Dice was unjustly enriched by Plaintiffs' loans to Rome Consulting; (4) Dice and its employees were unjustly enriched "as to the profits of Dice" while shareholders were impoverished; (5) Dice's actions justify the creation of a constructive

1

trust; and (6) Dice's actions justify Plaintiffs bringing a shareholder derivative claim on behalf of Dice.

Plaintiffs request the Court to find that (1) Defendants are jointly and severally liable for the repayment of Plaintiffs' Rome Consulting and Dice promissory notes plus costs of collection including reasonable attorney's fees; (2) Defendants must pay Plaintiffs ten million dollars directly or to be placed in a trust for Gerli & Co. to manage and distribute to shareholders in accordance with Panamanian law; and (3) Plaintiffs are entitled to receive ownership and control of the following domain names: dicelandcasino.com, romecasino.com, and romepartners.com.

On February 6, 2013, Plaintiffs filed their Complaint. [Doc. 1]. After Defendants failed to answer, on May 28, 2013, Plaintiffs filed a Motion for Entry of Default. [Doc. 10]. On June 4, 2013, the Clerk of Court entered default. [Doc. 11]. On August 29, 2013, Plaintiffs filed a Motion for Default Judgment. The Court held an evidentiary hearing on October 25, 2013. After the hearing, the Court entered an Order requesting further documentation from Plaintiffs. [Doc. 22]. Plaintiffs responded with further documentation on March 14, 2014. [Doc. 23]. On September 11, 2014, Plaintiffs filed an Amended Complaint. [Doc. 23]. After Defendants failed to answer again, on October 9, 2014, Plaintiffs filed a Motion for Entry of Default. [Doc. 30]. The Clerk of Court entered default against Defendants on October 23, 2014. [Doc. 31]. Plaintiffs filed a Motion for Default Judgment on October 24, 2014. [Doc. 34]. On October 29, 2014, pursuant to Federal Rule of Civil Procedure 55(2)(B), the Court held a hearing on Plaintiffs' Motion for Default Judgment and took the Plaintiffs' motion under advisement.

## FACTS

This case involves a complicated web of transactions between Plaintiffs and Defendants. It is worth noting that the Court is in a precarious position evaluating a case regarding

2

international online gambling when the Court is uncertain of the legality of the parties' business dealings. The Court's ruling on default judgment does not condone or remark on the legality of Plaintiffs' or others' actions.

Defendant Dice was incorporated in 2006 in the Republic of Panama under the corporation name Xavarian International Investment Solutions. [Amended Complaint, ¶¶ 1, 3 and Attachment 2]. On February 11, 2008, Xavarian amended its Articles of Incorporation and changed the name of the corporation to Dice Partners, Inc. (Dice). [Amended Complaint, Attachment 2]. Jeremy Barnett, a California resident, is the founder and President of Dice.[1] [Amended Complaint, pg. 2]. Dice operates online casinos using the domain names romecasino.com and dicelandcasino.com. [Amended Complaint, ¶ 2]. Dice published online gambling websites in February 2008 using these domain names and began accepting paying customers in April 2008. [Amended Complaint, ¶ 7].

In 2008, Barnett founded two additional companies to support Dice—Rome Partners, Inc. and Rome Consulting, Inc. [Amended Complaint, pg. 2]. Barnett created Rome Partners to manage marketing functions on behalf of Dice's online casinos via the website, romepartners.com. [Amended Complaint, pg. 2]. Despite the abbreviation "Inc." after the company names, Barnett did not incorporate Rome Partners, Inc. or Rome Consulting, Inc. [Amended Complaint, pg. 1, ¶¶ 38, 18-21, Attachment 10]. Plaintiffs contend Rome Consulting but not Rome Partners, "was intended to be incorporated in the British Virgin Islands and would have replaced Dice." [Amended Complaint, pg. 2]. Plaintiffs do not allege anything regarding the intended incorporation of Rome Partners.

---

[1] Barnett waived service on behalf of all three defendants.

### 1. Plaintiffs' loans to and investments in Dice and Rome Consulting

Plaintiffs met Jeremy Barnett through a mutual friend. In February 2008, Barnett presented Plaintiffs with a Subscription Agreement and Investment Representation and a business plan summary to solicit their investments in Dice. [Amended Complaint, ¶ 5]. Following this meeting, through Barnett, Heise purchased 1,925,000 shares in Dice for $250,000 and Egan purchased 777,000 shares in Dice for $100,000. [Amended Complaint, ¶¶ 56, 57, Attachments 16, 17; Response to Request for Information, Exhibit 1]. In May 2008, Heise purchased an additional 1,925,000 shares for $100,000. [Amended Complaint, ¶ 57, Attachment 18]. Plaintiffs and Dice executed Subscription and Investment Representations, which state that the laws of the United States and the State of Nevada govern the agreements. [Amended Complaint, Attachments 16, 17, 18 Section 4]. According to the shareholder register, since 2008, Heise and Egan have acquired and transferred the following shares in Dice:

| Name | Number of shares | Date acquired | Date of transfer |
|---|---|---|---|
| Bruce Egan | 770,000 | June 4, 2008 | July 15, 2011 |
| Bruce Egan | 770 | February 15, 2008 | July 15, 2011 |
| Richard Heise Sr. | 3,657,500 | December 1, 2008 | July 15, 2011 |
| Richard Heise Sr. | 1,925,000 | June 4, 2008 | July 15, 2011 |
| Richard Heise Sr. | 1925 | February 15, 2008 | July 15, 2011 |
| Richard Heise Sr. | 47 | December 24, 2013 | N/a |
| Bruce Egan | 31 | December 24, 2013 | N/a |

As of February 12, 2014, Plaintiffs and Barnett are the only shareholders in Dice.

### a. Facts relevant to the Dice promissory notes

Following their initial purchases of shares, Plaintiffs each loaned Dice $200,000.

Through a resolution, on or around October 30, 2008, the Dice Board of Directors authorized

Barnett to issue a promissory note for a maximum loan amount of $200,000 by each Plaintiff to

Dice. [Amended Complaint, Attachment 5]. Accordingly, Barnett issued each Plaintiff a

Promissory Note and Detached Warrant Purchase Agreement on October 20, 2008. [Amended

Complaint, Attachments 6 and 7].

Under the terms of the promissory notes, Plaintiffs were to lend a maximum $200,000 to

Dice in exchange for the option to purchase 4% of Dice's common stock and a promise that Dice

would repay the amount of the actual loan in full with 15% interest per annum within two years

from the date of the agreement, October 21, 2008. [Amended Complaint, Attachments 6 and 7,

Pg. 6]. The promissory notes outlined a payment schedule: the first payment with interest was

due four months after the initial payment, February 20, 2009. [Amended Complaint,

Attachments 6 and 7, Pg. 6]. Dice's subsequent payments were due every three months

following the first payment and each payment amount included three months interest on the

outstanding balance plus amortized principal. [Amended Complaint, Attachments 6 and 7, Pg.

6]. Barnett and, assumedly his wife, Lauren Barnett were listed as the Guarantors of the notes.[2]

[Amended Complaint, Attachments 6 and 7, Pg. 8]. Barnett signed the promissory notes on

behalf of Dice as its President. [Amended Complaint, Attachments 6 and 7, Pg. 8].

Egan remitted the full $200,000 on October 20, 2008 and Heise remitted $100,000 on

September 15, 2008 and another $100,000 on October 23, 2008. [Amended Complaint,

Attachments 6 and 7, Pg. 1].

---

[2] Plaintiffs did not name Barnett as a party to this action as the personal guarantor.

The Plaintiffs' Dice notes contained a default provision that stated,

> If any payment of principal and interest is not paid by the Company within five (5) business days after the date on which such payment shall become due and payable under this Note or upon the bankruptcy or receivership of the Company (each, an "Event of Default"), the Holder may, by giving written notice to the Company, declare the unpaid principal amount hereof and all accrued and unpaid interest hereon to be immediately due and payable and upon such declaration, the unpaid principal amount hereof and all accrued unpaid interest hereon shall be and become immediately due and payable. [Complaint, Attachments 6 and 7, Pg. 7].

Dice waived "presentment, demand, notice of demand, protest, notice of protest, and notice of dishonor and any other notice required to be given by law in connection with the delivery, acceptance, performance, default or enforcement of this Note." [Amended Complaint, Attachments 6 and 7, Pg. 7]. In the event of a default that results in a legal dispute, Dice agreed to "pay all costs of collection, including reasonable attorneys' fees." [Amended Complaint, Attachments 6 and 7, Pg. 7].

Dice's first two payments to Egan were full payments of $29,486.64, although the second payment was six days late. The third and fourth payments were late and were only partial ($14,000 and $16,722). After the second, untimely, and partial payment, instead of accelerating the payments per the optional default provision, Egan negotiated a delayed payment schedule with Barnett. [Response to Request for Additional Information, Attachment 11]. The delayed payment schedule extended the term of the note until January 31, 2011, Dice was to make four payments of $26,486.84 on a quarterly basis. [Response to Request for Additional Information, Attachment 11]. Dice did not follow the amended payment plan, but instead made three more partial-payments of $14,743.42, $16,986.64, $9,828.88 to Egan. [Response to Request for Additional Information, Attachments 11]. In total, Dice paid $195,792.30 on the note, which Plaintiff Egan breaks down into $144,242.60 in principal and $56,464.05 in interest. [Amended

6

Complaint, Attachment 14].  According to the Plaintiffs' calculations, Dice owes Plaintiff Egan, $55,757.40 in past due principal and $21,759.29 in past due interest through February 2, 2013 when Plaintiffs filed the Complaint.

Barnett, on behalf of Dice, made three payments out of the eight scheduled payments on Heise's promissory note.  Dice's first two payments were full payments of $29,486.64, but the third payment was a partial payment of $14,000.  [Amended Complaint, Attachment 15].  Dice paid a total of $72,973.28 to Heise, which Plaintiff Heise breaks down into $55,702.42 in principal payments and $17,270.86 in interest payments.  [Amended Complaint, Attachment 15]. According to Plaintiff Heise's calculations, Dice owes him $144,297.58 in past due principal and $73,818.75 in past due interest.[3]

### b.  Facts relevant to Rome promissory notes

In July 2009, in addition to and separate from their Dice loans, Plaintiffs each loaned $100,000 to Rome Consulting, Inc. [Amended Complaint, ¶¶ 19, 21].  On July 22, 2009, Barnett executed and issued promissory notes to both Egan and Heise.  [Amended Complaint, ¶¶ 19, 21, Attachments 11 and 12].  Per the notes, within six months of the date of the agreement, Rome Consulting was to repay, in monthly installments, $100,000 with two percent interest per month to both Egan and Heise.  [Amended Complaint, Attachments 11 and 12, Pg. 1].  The Rome promissory notes contain the same default language as the Dice promissory notes.  [Amended Complaint, Attachments 11 and 12, Pg. 1].  Rome Consulting has not repaid any amount of principal or interest to Egan or Heise.

The Rome promissory notes state, ". . . Rome Consulting, Inc., a British Virgin Islands

---

[3] Both Plaintiffs' accountings include interest and principal amounts for the Rome Consulting, Inc., which is a separate promissory note issued by a separate entity and thus requires a separate analysis.

International Business Corporation organized under the laws of the British Virgin Islands. . ."
This statement is inaccurate; as discussed above, Barnett never incorporated Rome Consulting.
[Response to Request for Information, pg. 9 "Rome Consulting and Rome Partners were never
formalized. They do not legally exist, so technically no one has the authority to accept service or
enter into agreements on their behalf. . . . Rome Consulting, Inc. was never formalized. Mr.
Barnett could not have been granted authority through that entity."].   Plaintiffs assert that
Barnett represented that he had authority on behalf of Rome Consulting to execute and issue the
promissory notes. [Amended Complaint, ¶ 38]. Rome Consulting, however, does not exist and
Barnett never incorporated Rome Consulting.

### c.  Facts relevant to Plaintiffs' claims for gambling proceeds and domain names

Plaintiffs claim that Joshua Cartu was the Dice CEO and effectively had control of the
entire Dice business. According to Cartu's hiring documents, however, Rome Partners, not Dice,
was his employer.[4] Cartu started on March 1, 2008. [Amended Complaint, Attachment 19]. His
base salary was $165,000 annually with a 20% raise yearly. [Amended Complaint, Attachment
19]. He was eligible for a cash bonus equal to 5% of the profits based on the financial
performance of the company. [Amended Complaint, Attachment 19]. Plaintiffs claim that Cartu
used his control over the company to steal passwords to romecasino.com, diceelandcasino.com,
romepartners.com in 2009, change the passcodes, take control of the websites, and direct the
profits from the domain sites to his own bank accounts in the form of bonuses and other
compensation in excess of the amounts in which he was contractually entitled.

---

[4] Company is defined in his employment contract as "Rome Partners, or any successor
corporation, whether or not resulting from a Change in Control." [Amended Complaint,
Attachment 19, pg. 2].

Plaintiffs further contend that contrary to the Articles of Incorporation, they have not received a single dividend or distribution from Dice because of Cartu's alleged actions. [Amended Complaint, ¶¶ 50-54, 58-62]. The only support Plaintiffs provide in support of Cartu stealing company assets is their statement that Cartu was living a lifestyle that exceeded his annual salary. [Amended Complaint, ¶¶ 59]. Plaintiffs brought a separate federal suit against Cartu alleging that Cartu violated RICO and several other federal and state laws by defrauding Plaintiffs out of their substantial investment in Dice, which Judge Freudenthal dismissed for lack of personal jurisdiction over Cartu. [2:13-cv-00008, Doc. 30]. Dice has not pursued any action against Cartu. [Amended Complaint, ¶ 27].

Plaintiffs believe Dice generated more than ten million dollars in profit since April 2008. [Amended Complaint, ¶ 23]. Plaintiffs base this amount on the last monthly net gaming revenue, $829,076 multiplied by 12 months. [Amended Complaint, ¶ 23]. Plaintiffs allege, "It is a standard in the gaming community that profit generally runs 30% of net gaming so $10 million is a conservative estimate based on 5 years of gaming." [Amended Complaint, ¶ 23]. Plaintiffs do not provide any support for the "standard" in the gaming community, nor do they provide any documentation evidencing Cartu's last monthly net gaming revenue report of $829,076. Plaintiff Egan outlines the calculation as follows:

> Before any misappropriation occurred, as an investor in the process of considering loaning money to DICE, I personally requested the company CEO to present his best estimate of receivables (i.e. net gaming proceeds). On September 12, 2008 the CEO presented data from the payment processor that actual net gaming revenue for July 2008 was $487,805.00. That is the last real-world data point available. Since the company first opened for business in April 2008 when revenue was zero, this was obviously a tremendous growth period, so it would not be realistic to extrapolate that early rate of growth. There are growth trend estimates from 2009 to 2013 available for online gambling from public sources. One source often cited, h2 Gambling Capital, anticipated a 13% annual online gambling growth rate. . . . Applying a 13% annual growth rate for 5 years (July 2008-July 2013) to a base of $487,805 (July 2008) yields a monthly loss estimate

of $898,749.00 by July 2013 ($487,805 x 1.13 x 1.13 x 1.13 x 1.13 x 1.13 = $898,749.00) implying an annual loss in year 2013 of $10,784,988. It is very conservative in that it excludes the accumulation of losses from years 2008-2012.

Plaintiffs assert that ten million dollars is a conservative estimate for five years of gaming, 2008-2013. [Amended Complaint, ¶ 23]. Based on the shareholder register, however, Plaintiffs were shareholders for 11 months in 2008, 2009, 2010, and for seven months in 2011 (January through July). Plaintiffs were not shareholders for the remainder of 2011, or 2012, but again became shareholders for eight days in 2013 and two months in 2014 before they filed suit. Accordingly, at the time of the complaint, Plaintiffs were shareholders for roughly three years, two months, and eight days.

## DISCUSSION

### 1. Jurisdiction

Plaintiffs and Barnett agree that the Court has diversity jurisdiction under 28 U.S. Code § 1332, but their agreement does not relieve the Court of its independent duty to determine whether jurisdiction is proper. *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties"). Plaintiffs, as the party seeking default judgment, "need only make a prima facie showing . . .[of jurisdiction] if the motion is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assoc., Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 773 (10th Cir. 1997).

### a.  Subject matter jurisdiction

Under 28 U.S. Code § 1332, "[T]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state." Both Plaintiffs are citizens of Wyoming. Their alleged damages, even based solely on the promissory notes, exceed $75,000.

Thus, the question becomes whether all Defendants are foreign citizens. A corporation or an unincorporated association is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) and (d)(10). When determining a corporation's principal place of business, the Court reviews the "total activity of the company" or the "totality of the circumstances," considering "the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations." *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 915 & n. 2 (10th Cir.1993).

Plaintiffs do not provide extensive information on Dice's principal place of business. The record, however, contains adequate information to justify Dice's Panamanian citizenship. Dice was incorporated in Panama, Dice's Board of Directors convenes in Panama City, and its articles of incorporation state, "the domicile of the corporation shall be in Panama City, Republic of Panama." [Amended Complaint, Attachment 2, Article 4]. The Court finds that Dice is a foreign citizen, and thus, the Court finds it has diversity jurisdiction over Dice.

Plaintiffs have not provided sufficient information to determine the Rome entities' citizenship. From the record, however, the Court finds that it is highly unlikely that the Rome entities are Wyoming citizens. Thus, the Court assumes that both companies are foreign citizens.

It is clear that the matter in controversy exceeds the sum or value of $75,000.  Accordingly, the Court has subject matter jurisdiction.

### b.  Personal Jurisdiction

Next, the Court must determine whether it has personal jurisdiction over the foreign defendants.  "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction would not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995).  Wyoming's long-arm statute permits Wyoming courts to exercise personal jurisdiction over a defendant on any basis that is consistent with the Wyoming or United States constitutions. Wyo. Stat. § 5-1-107(a).

The general constitutional test for personal jurisdiction is well founded.  A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State. . . [and] [t]he defendant's contacts with the forum state [are] such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A defendant meets the minimum contacts requirement if it "purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Such conduct within the forum State "make[s] being sued there foreseeable so that the defendant could 'reasonably anticipate' the suit." *Fireman's Fund Ins.Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (quoting *World–Wide Volkswagen*, 444 U.S. at 297).

Plaintiffs have not alleged that the Court has general jurisdiction or alleged any facts that

establish that Dice, Rome Consulting, or Rome Partners have "continuous and systematic"

contacts in Wyoming. *Dubnikov v. Chalk &Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1078

(10th Cir. 2008) (citations omitted). Accordingly, the question is whether the Court has specific

jurisdiction over all three Defendants. "Specific jurisdiction . . . is premised on something of a

quid pro quo: in exchange for "benefitting" from some purposive conduct directed at the forum

state, a party is deemed to consent to the exercise of jurisdiction for claims related to those

contacts." *Id.*

### i.   Specific personal jurisdiction over Dice

Plaintiffs each loaned Dice $200,000 and purchased shares in Dice. Per these loans and

investments, Plaintiffs and Barnett, on behalf of Dice, executed promissory notes[5] and

subscription agreements.[6]  A contract between an out-of-state party and a resident of the forum

state cannot, standing alone, establish sufficient minimum contacts with the forum. *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985).  However, "with respect to interstate contractual

obligations ... parties who reach out beyond one state and create continuing relationships and

obligations with citizens of another state are subject to regulation and sanctions in the other State

for the consequences of their activities." *Id.*  When evaluating jurisdiction for a contract claim,

relevant factors for assessing minimum contacts include "prior negotiations and contemplated

future consequences, along with the terms of the contract and the parties' actual course of

---

[5] The promissory notes contain an optional forum clause that states, "the Courts of the state of
Nevada have jurisdiction to hear and decide the case, and Company and Investor further agree no
attempt will be made by either party to transfer jurisdiction outside of the United States."
[Amended Complaint, Attachments 6 and 7].  Neither party is enforcing this optional forum
clause, thus the Court finds it does not deprive it of jurisdiction.

[6] Barnett had authority to act on Dice's behalf. [Response to Request for Information,
Attachment 5; Amended Complaint, Attachments 13, 16, 17, 18].

dealing." *Id.* at 479.

It is clear from the record that Barnett, on behalf of Dice, emailed, called, and met with Plaintiffs in Jackson Hole about their loans to, investment in, and general business with Dice. Plaintiffs' relationship with Dice in Wyoming has been long standing.  Plaintiffs were investors in Dice on and off from 2008 to present.  Plaintiffs, as shareholders, will likely continue contact with Dice and its agents.  Moreover, Barnett, on behalf of Dice, consented to jurisdiction in Wyoming in his confession of judgment. [Doc. 14, Exhibit 2].  Thus, through the actions of its corporate agent, Barnett, Dice purposefully availed itself to Wyoming.

### ii.     Specific personal jurisdiction over Rome Consulting and Rome Partners

Regarding Rome Consulting, the record demonstrates that Barnett emailed, called, and met with Plaintiffs about their loan to Rome Consulting, their possible shares in Rome Consulting, the draft, unexecuted Rome Consulting share exchange agreement, and the draft, unexecuted Rome Consulting Articles of Incorporation.  Contrary to his representations to Plaintiffs, however, Barnett never incorporated Rome Consulting.  [Response to Request for Information, pg. 4-5].  Accordingly, Plaintiffs admit that Barnett acted without Rome Consulting's authorization to solicit loans and issue promissory notes on its behalf because Rome Consulting did not exist in a manner in which it could authorize Barnett's actions. [Response to Request for Information, pgs. 4, 9].  Because Rome Consulting did not give authority for Barnett to act on its behalf in Wyoming, the Court finds that Rome Consulting did not purposefully availed itself of Wyoming jurisdiction and it does not have jurisdiction over Rome Partners.

Regarding Rome Partners, Plaintiffs fail to make any specific allegations regarding Rome Partners' actions in Wyoming or state any specific claims against Rome Partners.  Plaintiffs did

not invest in or loan any money to Rome Partners. The only link to Rome Partners in the record is that Rome Partners employed Joshua Cartu. [Egan Affidavit, Exhibit 10]. Cartu, however, is not a named party to this suit and this Court does not have jurisdiction over Cartu. [Docket No. 23-cv-00008, Doc. 30].

Because Plaintiffs have not alleged any actions by Rome Partners relevant to this lawsuit at all, let alone in Wyoming, the Court finds that it does not have jurisdiction over Rome Partners.[7]  Furthermore, the Court finds that Rome Partners, like Rome Consulting, does not exist and Barnett lacked authority to act on its behalf. As such, any action by Barnett allegedly on behalf of Rome Partners in Wyoming does not satisfy Plaintiffs' burden to establish that Rome Partners purposefully availed itself of jurisdiction in Wyoming.

Moreover, because Barnett did not have authority to act on Rome Consulting or Rome Partners' behalf, Barnett could not have waived service on behalf of either. [Response to Request for Information, pg. 2]. Plaintiffs did not properly serve Rome Partners or Rome Consulting, and thus neither party is properly before this Court. Accordingly, the Court finds that it does not have jurisdiction over Rome Partners or Rome Consulting because they do not legally exist, they did not avail themselves of Wyoming jurisdiction, and Plaintiffs did not properly serve them. Accordingly, the Court cannot make any determinations regarding the Plaintiffs' claims[8] against them. As such, the Court will not grant default judgment or consider

---

[7] In his testimony, Plaintiff Egan states that Rome Partners availed themselves of jurisdiction in Wyoming by soliciting funds through its CEO, Cartu. As mentioned, previously, however, this Court has already found that it does not have personal jurisdiction over Cartu.

[8] Plaintiffs claim that Rome Consulting defaulted on its promissory notes to each Plaintiff. Plaintiffs make no direct claims against Rome Partners. Throughout the Amended Complaint, Plaintiffs refer to "Defendants" generally, which makes it unclear whether Plaintiffs assert additional claims against the Rome organizations. For example, Plaintiffs assert the Dice

any of the claims against Rome Partners and Rome Consulting, but will only consider Plaintiffs'
claims against Dice.

### 2.  Default judgment standard of review

The Court may enter a default judgment against a party who failed to plead or otherwise
defend an action. FED. R. CIV. P. 55. A trial court has broad discretion in deciding a default
judgment question. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987) "Where the
complaint states an adequate legal basis for relief against a party in default, default judgment is
appropriate." *Top Rank, Inc. v. Fey*, 2009 WL 1384171, at *3 (D. Colo. May 15, 2009)
(unpublished decision); *see also Garrett v. Seymour*, 217 F. App'x 835, 838 (10th Cir. 2007)
(unpublished decision) ("[I]t was within the district court's discretion to deny [Plaintiff's] request
for a default judgment because his complaints were legally insufficient to state a claim."); *see
also OTO Software, Inc. v. Highwall Technologies, LLC*, 2011 WL 3236049, at *4 (D. Colo. July
5, 2011) (unpublished decision) ("While the court should accept the plaintiff's well-pled factual
allegations as true, a defendant's default does not guarantee a judgment in favor of the moving
party.") (citations omitted).

In addition to demonstrating an adequate basis for legal relief, the moving party must also
prove it is entitled to a specific and reasonable amount of damages. *Hennecke, Inc. v. Advanced
Building Composites, LLC*, 2010 WL 2464842, at *2 (D. Kan. June 4, 2010) (unpublished
decision) ("A plaintiff cannot satisfy the certainty requirement simply by requesting a specific
amount. He or she must also establish that the amount requested is reasonable under the
circumstances."); *see Klapprott v. United States*, 335 U.S. 601, 611–12 (1949) (stating that

---

Articles of Incorporation creates a contract between shareholders and Dice, including
subsidiaries or **other operating entities**.

actual proof must support any default judgment for money damages where there is an uncertainty as to the amount.).

### 3. Plaintiffs' claim that Dice was unjustly enriched through its receipt of Plaintiffs' loans to Rome Consulting

Plaintiffs claim that Dice was unjustly enriched through its receipt of Plaintiff's loans to Rome Consulting. Per Wyoming law,[9] "A person is not liable on an instrument unless (1) the person signed the instrument, or (2) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under section 34.1-3-402." Wyo. Stat. § 14.1-3-401(a). At this time, Plaintiffs have not provided any evidence that Barnett signed the notes on Dice's behalf, that Dice ratified the promissory notes after their execution, or that Dice received the funds from Rome Consulting. Thus, even in a default action, the Court cannot hold Dice liable for repayment of the Rome Consulting promissory notes under a theory of unjust enrichment.

The Court cannot help but speculate that there is some collusion between Plaintiffs and Barnett due to Plaintiffs' choice not to name Barnett personally in this suit. This choice is to their detriment. Barnett guaranteed the Rome Consulting notes and represented to Plaintiffs that he had authority to execute the notes on behalf of Rome Consulting. [Amended Complaint,

---

[9] Wyoming's adopted Uniform Commercial Code, which governs promissory notes, states the following regarding choice of law:

> Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this act applies to transactions bearing an appropriate relation to this state.

WYO. STAT. § 34.1-1-105 (a). The Rome Consulting notes do not contain a choice of law provision.

Attachments 10 and 11]. Under Wyoming law, "All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation . . . are jointly and severally liable for all liabilities created while so acting." Wyo. Stat. § 17-16-204. Thus, Plaintiffs' argument that they have no legal remedy if their unjust enrichment and default claims against Dice are unsuccessful has no merit. Accordingly, the Court will not grant default judgment on Plaintiffs' claim of unjust enrichment.

### 4. Dice's alleged unjust enrichment through its employee's receipt of profits

Plaintiffs argue that Dice's profits likely exceeded ten million dollars since 2008, no dividends have been issued to shareholders, Cartu took control of the company assets and has operated them as his own, and thus, "employees of DICE have been unjustly enriched and shareholders have been impoverished." Plaintiffs request ten million dollars as a remedy.

First, it is necessary to note that Cartu, the employee who was allegedly unjustly enriched, is not a party to this case. This claim is an attempt to circumvent Judge Freudenthal's prior decision that the Court does not have jurisdiction over Cartu. Plaintiffs fail to provide any law that stands for the proposition that the Court can hold a corporation liable for its employee's profits under a theory of unjust enrichment, especially when the employee is not a party to the case. Since Cartu is not a party before this Court, the Court cannot grant default judgment on this claim.

Additionally, Plaintiffs have not provided any actual evidence showing Dice's profits since 2008 or the amount of Cartu's unjust enrichments. Plaintiffs' contention that Dice has received ten million dollars in profits is mere speculation. Furthermore, Plaintiffs fail to explain how the ten million dollar figure reflects their percentage of shares at any time during the last five years and fail to allege or prove how much money Cartu allegedly received unjustly.

18

Plaintiffs' ten million dollars damages calculation does not satisfy the default judgment actual damages standard for this claim or any other claim. *Hennecke, Inc. v. Advanced Building Composites, LLC*, 2010 WL 2464842, at *2 (D. Kan. June 4, 2010) (unpublished decision) ("A plaintiff cannot satisfy the certainty requirement simply by requesting a specific amount. He or she must also establish that the amount requested is reasonable under the circumstances."); *see Klapprott v. United States*, 335 U.S. 601, 611–12 (1949) (stating that actual proof must support any default judgment for money damages where there is an uncertainty as to the amount.). Accordingly, the Court cannot find a legal basis for relief under this claim and cannot find that the damages are supported by admissible evidence. Therefore, the Court will not grant default judgment on this claim.

### 5.  Breach of contract claim

First, the Court must discuss what law applies to this claim. "The general rule is that the state of incorporation governs the existence and extent of corporate fiduciary obligations." *Safecard Servs., Inc. v. Halmos*, 912 P.2d 1132, 1135 (Wyo. 1996) (citing *Hausman v. Buckley*, 299 F.2d 696, 703 (2nd Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962)). Dice was incorporated in Panama. Plaintiffs submitted information supporting the premise that Panamanian corporate law is identical to Delaware corporate law. For the purposes of this order, the Court will assume that Plaintiffs' representations are correct and the Court will apply Delaware law to this claim.

The Delaware Supreme Court held, "where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim ... [and] any fiduciary claims arising out of the same facts that underlie the contract obligations [are] foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). To recover for

breach of contract, a plaintiff must establish the existence of three elements: "(1) the existence of a contract; (2) the breach of an obligation imposed by that contract; and (3) resulting damage to the non-breaching party." *Gunzl v. Veltre*, 2008 WL 5160137, at *4 (Del.Com.Pl.Ct. May 22, 2008).

Plaintiffs claim that by diverting funds to third parties to the detriment of shareholders, Dice breached a contract, the Articles of Organization, which state

> The manner of disposal of the rights and properties of the corporation, including powers to alienate, purchase, assign, transfer, waive, assess and mortgage, in whole and/or in part, enter into financial agreements, with regard to corporate properties and rights and offer securities in the name of the corporation to guarantee obligations of third parties, rests exclusively with the Company's shareholders.
> . . .
> The corporation must distribute dividends from time to time whenever the shareholders and/or Board of Directors shall so decide.

There is no dispute that the articles of incorporation are a legally binding contract. The Court, however, finds that Plaintiffs failed to demonstrate that there was a breach of this contract by Dice.

Plaintiffs assert that Dice or a Dice officer purposefully diverted assets to Cartu without shareholder approval. Plaintiffs failed to allege who improperly authorized the distribution of corporate assets. In fact, it seems from the record, that no one from Dice authorized the distributions, but that Cartu stole the assets from Dice. If Cartu stole the assets, Dice clearly did not intentionally divert corporate assets to him without shareholder approval in violation of the Articles of Organization.

Regardless of how Cartu received the corporate assets, Plaintiffs have not provided any evidence to support their claim that Dice actually profited as Plaintiffs allege and that Cartu

actually received such assets.[10]  The only support Plaintiffs provide is their statement that Cartu

was living a lifestyle that exceeded his annual salary.  [Amended Complaint, ¶ 59].  The Court

finds these allegations insufficient.  Thus, the Court cannot grant default judgment on the claim

that Dice purposefully diverted assets to Cartu without shareholder approval.

     Plaintiffs also assert that Dice breached terms of the Articles of Organization by failing to

issue dividends.

> That courts have the power in proper cases to compel the directors to declare a
> dividend, is sustained by respectable authorities. But that they should do so on a
> mere showing that an asset exists from which a dividend may be declared, has
> never, I dare say, been asserted anywhere. In such a case a court acts only after a
> demonstration that the corporation's affairs are in a condition justifying the
> declaration of the dividend as a matter of prudent business management and that
> the withholding of it is explicable only on the theory of an oppressive or
> fraudulent abuse of discretion. . . . [T]he basic question is whether or not the
> board has wrongfully refused to pay dividends even if funds did exist which could
> have been used for such purpose.  The established test for this is whether the
> board engaged in fraud or grossly abused its discretion.

*Baron v. Allied Artists Pictures Corp.*, 337 A.2d 653, 659 (Del. Ch. 1975) (internal citations

omitted).  Plaintiffs assert, "Dice remains an on-going enterprise that has expanded to include a

number of other online casinos and continues to earn and distribute revenue and profit to others."

[Egan affidavit, pg.7].  Plaintiffs did not provide any evidence to support this statement.

Plaintiffs failed to show or even allege that Dice's affairs are in a condition that justifies the

declaration of the dividend and that by failing to issue dividends Dice's Board engaged in fraud

or grossly abused its discretion.

     Under Delaware law, Plaintiffs, as shareholders, could have inspected Dice's records to

investigate the asserted corporate wrongdoing.  *White v. Panic*, 793 A.2d 356, 364-65 (Del. Ch.

2000) aff'd, 783 A.2d 543 (Del. 2001).  After an investigation, Plaintiffs could have provided

---

[10] Plaintiffs' Amended Complaint states that Attachment 20 is a list of assets in Cartu's
possession.  Plaintiffs, however, failed to attach the document to the Amended Complaint.

profit and loss statements, and the financial state of Dice, all of which would have furthered their claims. Plaintiffs failed to do so.

In conclusion, the Court finds that Plaintiffs claims lack the necessary support to demonstrate that Dice breached the articles of incorporation and the Court will not grant default judgment on Plaintiffs' claim for breach of contract.

### 6. Constructive Trust and Trust creation

As a separate claim, Plaintiffs request the Court to order ten million dollars be placed in a constructive trust.[11]

> A constructive trust arises by construction of the court when equity so demands. 76 Am.Jur.2d Trusts § 200 (1992). It is an equitable remedy imposed to compel a person who unfairly holds a property interest to hold property in trust for the person for whom in equity and good conscience it should be held. *Id.* There must be some or all the following elements: a promise, either express or implied, a transfer made in reliance of that promise, and unjust enrichment. *Id.,* at § 205. . . . We noted that "Scott on Trusts, Vol. V, Third Edition (1967) § 462.2 at page 3417, says that a constructive trust 'arises where the retention of property would result in the unjust enrichment of the person retaining it.' " 606 P.2d at 309. Equity "abhors unjust enrichment." *Wantulok v. Wantulok*, 67 Wyo. 22, 50, 223 P.2d 1030, 1032 (1950); *see also Fuller*, 606 P.2d at 309.

*Rossel v. Miller*, 2001 WY 60, 26 P.3d 1025, 1028 (Wyo. 2001).

To support this claim, Plaintiffs state: (1) the Dice Articles of Incorporation is a contract between Dice shareholders and Dice; (2) Dice owes Plaintiffs a fiduciary duty; (3) Dice solicited investments and loans from Plaintiffs via documents that demonstrated a healthy profit; (4) through its solicitation, articles of incorporation, and fiduciary duty, Dice made an implied promise that it would manage the company's casino business assets in a way that would move

---

[11] Plaintiffs include a separate claim entitled, "Trust Creation." It is unclear how this differs from the constructive trust claim. As such, the Court finds there is no need for a separate analysis.

the company's business plan forward; and (5) as a result of Dice's breach of its duties and implied promises, Dice and its employees were unjustly enriched.

The Court finds that it cannot grant default judgment to Plaintiffs on a theory of constructive trust. Plaintiff has not provided evidence of who, Cartu or Dice, holds the money that Plaintiffs seek. If Cartu is the person "retaining" the proceeds, Plaintiffs cannot succeed on its claim because Cartu is not a party to this case and the Court does not have jurisdiction over him. If Plaintiff is alleging that Dice retains the profits sought, Plaintiffs still face the problem that it is illogical that Dice has been unjustly enriched by earning a profit. As discussed in detail above, the Court also finds Plaintiffs have not provided sufficient evidence to show Dice's profits, the amount of money that Cartu stole, or their entitlement to ten million dollars of Dice's profits. Accordingly, the Court cannot grant default judgment in favor of Plaintiffs on their claim for a constructive trust.

### 7. Shareholder Derivative suit

Like Plaintiffs' breach of contract claim, the Court will apply Delaware law to this claim. Under Fed. R. Civ. P. 23.1, in order to bring a shareholder derivative suit,

The complaint must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

23

Plaintiffs failed to verify their Amended Complaint.  The Court was unable to locate Delaware law stating whether this is fatal to their claim, and there is a split of authority in other jurisdictions.  *See* 19 Am. Jur. 2d Corporations § 2107.  Accordingly, the Court will continue as if it is not fatal to their claims.

Plaintiffs assert they were shareholders from 2008 to present.  According to the shareholder register provided by Plaintiffs, since 2008, Heise and Egan have acquired and transferred the following shares of Dice:

| Name | Number of shares | Date acquired | Date of transfer |
|---|---|---|---|
| Bruce Egan | 770,000 | June 4, 2008 | July 15, 2011 |
| Bruce Egan | 770 | February 15, 2008 | July 15, 2011 |
| Richard Heise Sr. | 3,657,500 | December 1, 2008 | July 15, 2011 |
| Richard Heise Sr. | 1,925,000 | June 4, 2008 | July 15, 2011 |
| Richard Heise Sr. | 1925 | February 15, 2008 | July 15, 2011 |
| Richard Heise Sr. | 47 | December 24, 2013 | N/a |
| Bruce Egan | 31 | December 24, 2013 | N/a |

Since its incorporation, Dice has had 21 total shareholders, including Plaintiffs, all of whom transferred their shares to David Baret on July 15, 2011.  [Amended Complaint, Attachment 3].  According to the shareholder register, David Baret was the sole shareholder from July 15, 2011 to December 24, 2013, when he transferred his shares to Plaintiffs Egan and Heise (31 shares and 47 shares respectively) and Barnett (22 shares).  [Amended Complaint, Attachment 3]; [Response to Request for Information, Exhibit 1].  Plaintiffs testified during the

default judgment hearing that they transferred their shares to better their position in an international court to pursue legal action against Cartu.

In accordance with Rule 23.1, Plaintiffs pled that this action was not collusive. They also asserted that Barnett refused to take legal action to protect Dice's assets, which they support with an email from Barnett to Plaintiffs stating as such. [Amended Complaint, Attachment 13]. Additionally, Plaintiffs produced a document signed by David Baret that stated,

> IT WAS RESOLVED: Messrs. Bruce Egan and Richard A. Heise, Sr., at the US court's discretion be imbued with all of the rights and obligations of Dice Partner's Inc. as its authorized representatives, or be permitted to move forward as shareholders initiating a derivative action. Dice Partner's Inc. expressly waives any right it may have to object to such determination by the court.

[Response to Request for Information, Attachment 3]. Plaintiffs have the Board's authorization to proceed. Thus, pending the unresolved issues of the timing of Plaintiffs' share ownership and the complaint verification, Plaintiffs have met the pleading requirements under Fed. R. Civ. P. 23.1.

"The nature of [a derivative] action is two-fold. First, it is the equivalent of a suit by the shareholders to compel the corporation to sue. Second, it is a suit by the corporation, asserted by the shareholders on its behalf, against those liable to it." *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990). Plaintiffs made cursory allegations to satisfy their pleading requirement under Rule 23.1, requested ten million dollars (personally not on behalf of Dice) and the domain names as a remedy (personally not on behalf of Dice), but failed to include any substance in their claims. Plaintiffs do not state what claims they would like to pursue on the corporation's behalf or against whom they would like to assert such claims. For example, Plaintiffs failed to state if they want to bring a suit on behalf of Dice against Cartu or another Dice officer for breach of

fiduciary duty, breach of loyalty, usurpation of corporate opportunity, self-dealing, excessive compensation, etc. They essentially skipped the second step in a shareholder derivative action.

The Court also finds it troubling that it is unclear who has the ten million dollars Plaintiffs seek or who is responsible for the wrongs Plaintiffs seek to remedy, Cartu, a Dice officer or another party. The Court cannot presume against whom Plaintiffs would like to bring a derivative suit against on behalf of the corporation and what claims Plaintiffs would bring. Plaintiffs did not properly plead a shareholder derivative claim.

The Court could possibly rule on the first portion of the derivative claim, providing Plaintiffs the authority to bring suit on behalf of Dice against those Plaintiffs believe wronged the corporation,  but the effectiveness of such a ruling is questionable.  Accordingly, the Court finds that it cannot enter default judgment on this claim.

### 8.  Dice's default on promissory notes

In a diversity case like this one, "except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216–17 (10th Cir.2011) (quoting *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Because this Court sits in Wyoming, the Court applies Wyoming's choice of law rules.

Wyoming's adopted Uniform Commercial Code, which governs promissory notes, states the following regarding choice of law:

> Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this act applies to transactions bearing an appropriate relation to this state.

WYO. STAT. § 34.1-1-105 (a).  The Heise and Egan Dice promissory notes both state:

> The agreement, the notes, and the warrant, and all actions arising out of or in connection with the Agreement, the Notes and the Warrant shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to the conflicts of law provisions of the State of Nevada or of any other state.

[Amended Complaint, Attachments 6 and 7].  As such, Nevada law governs the claims related to the Dice promissory notes.

Under the terms of the promissory notes, Plaintiffs were to lend a maximum $200,000 to Dice in exchange for the option to purchase 4% of Dice's common stock and a promise that Dice would repay the amount of the actual loan in full with 15% interest per annum within two years from the date of the agreement, October 21, 2008.  [Amended Complaint, Attachments 6 and 7, Pg. 6].  Each Plaintiff loaned $200,000 to Dice.

Dice's promissory notes, as attached to the Amended Complaint, satisfy the definition of note, "a written undertaking to pay money signed by the person undertaking to pay," under Nevada Statute section 104.3104.  Plaintiffs Egan and Heise are both the proper holders of the note and entitled to enforce its terms under Nevada Statute section 104.3301.

Plaintiffs' Dice notes contained a default and acceleration provision that stated,

> If any payment of principal and interest is not paid by the Company within five (5) business days after the date on which such payment shall become due and payable under this Note or upon the bankruptcy or receivership of the Company (each, an "Event of Default"), the Holder **may**, by giving written notice to the Company, declare the unpaid principal amount hereof and all accrued and unpaid interest hereon to be immediately due and payable and upon such declaration, the unpaid principal amount hereof and all accrued unpaid interest hereon shall be and become immediately due and payable.

[Complaint, Attachments 6 and 7, Pg. 7, emphasis added].  Dice waived "presentment, demand, notice of demand, protest, notice of protest, and notice of dishonor and any other notice required

27

to be given by law in connection with the delivery, acceptance, performance, default or enforcement of this Note." [Amended Complaint, Attachments 6 and 7, Pg. 7].  In the event of a default that resulted in a legal dispute, Dice agreed to "pay all costs of collection, including reasonable attorneys' fees." [Amended Complaint, Attachments 6 and 7, Pg. 7].

As discussed in the fact section, Dice repeatedly made late payments to Plaintiffs and never fully repaid either Plaintiff.  Plaintiffs provided a number of emails from Plaintiff Egan to Barnett discussing late payments on the promissory notes, extending the payment deadlines, and finally an email in which Plaintiff Egan told Barnett, "given that we have not made any progress in collection of funds from Josh [Cartu], we have no choice but to file a civil complaint for collection against you based on your personal guarantee for the repayment of our loans." [Response to Request for Additional Information, Attachments 11].  Although there is no evidence that Plaintiff Heise made similar demands for payment, the Court finds that Plaintiff Heise's demand was incorporated into Plaintiff Egan's final email demanding repayment and threatening suit against Barnett personally.  Thus, both Plaintiffs complied with the default provision.  It is clear that Dice failed to pay Plaintiffs the remaining amounts owed under the Dice promissory notes.  Thus, the Court finds that Plaintiffs are entitled to default judgment on this claim.

Plaintiff Egan provided the Court with a detailed summary of the amount owed to him under the Dice promissory note and subsequently testified regarding the amounts.  [Plaintiffs' Exhibit 3].  Plaintiff Egan represented to the Court that the unpaid principal amount under his Dice promissory note is $55,757.40.  Accordingly, the Court finds that Plaintiff Egan may recover of Defendant Dice, the total sum owing on the promissory note, in the amount of

28

$55,757.40, plus interest from December 2, 2010, the date of the last principal payment, at the contractual rate of 15% per annum.

Regarding Plaintiff Heise's Dice promissory notes, Plaintiff Heise provided the Court with a detailed summary of the amount owed to him under the Dice promissory note and subsequently testified regarding the amounts. [Plaintiffs' Exhibit 13.]  Plaintiff Heise testified that the unpaid principal amount under his Dice promissory note is $144,297.58.   Accordingly, the Court finds that Plaintiff Egan may recover of Defendant Dice, the total sum owing on the promissory note, in the amount of $144,297.58, plus interest from September 8, 2009, the date of the last principal payment, at the contractual rate of 15% per annum.

In addition to the principal and interest due, Plaintiffs request attorney's fees and costs of collection.  Nevada law permits the award of attorney's fees if expressly provided for in a contract.  *Laughlin Recreational Enterprises, Inc. v. Zab Dev. Co.*, 98 Nev. 285, 288, 646 P.2d 555, 557 (1982).  The promissory note states that in the event of a default resulting in a legal dispute, Dice agrees to "pay all costs of collection, including reasonable attorneys' fees." [Amended Complaint, Attachments 6 and 7, Pg. 7].  Thus, the Court finds that Plaintiffs are entitled to reasonable attorneys' fees.  Plaintiffs have yet to submit any documents demonstrating the amount of attorney's fees and costs.

## CONCLUSION

The Court having reviewed the files and records in this action and having heard the testimony during the October 29, 2014 hearing and for the reasons articulated above hereby **DENIES** Plaintiffs' Motion for Default Judgment as to Plaintiffs' claims for default on **Rome entities'** promissory notes (Count 1), breach of contract (Count 2), unjust enrichment as to the 100K promissory notes (Count 3), unjust enrichment as to the profits of Dice (Count 4),

constructive trust (Count 5), shareholder derivative action (Count 6), and trust creation (Count 7).

The Court having reviewed the files and records in this action and having heard the testimony during the October 29, 2014 hearing and for the reasons articulated above hereby **GRANTS** Plaintiffs' Motion for Default Judgment as to Plaintiffs' claims for default on the **Dice** promissory notes (Count 1).

1. Dice paid Plaintiff Heise a total of $55,702.42 toward the outstanding amount of $200,000 owed under the Dice promissory note. The remaining balance owed is $144,297.58. Defendant Dice is liable for the remaining amount of $144,297.58, owed to Plaintiff Heise, plus interest from September 8, 2009, the date of the last principal payment, at the contractual rate of 15% per annum through the date judgment is entered in this case, plus post judgment interest after the date of entry of judgment at the statutory rate provided by 28 U.S.C. §1961, .46%, and an award of costs and attorney's fees, in an amount to be determined after entry of final judgment.

2. Dice paid Plaintiff Egan a total of $144,242.60 toward the outstanding amount of $200,000 owed under the Dice promissory note. The remaining balance owed is $55,757.40. Defendant Dice is liable for the remaining amount of $55,757.40, owed to Plaintiff Egan, plus interest from December 2, 2010, the date of the last principal payment, at the contractual rate of 15% per annum through the date judgment is entered in this case, plus post judgment interest after the date of entry of judgment at the statutory rate provided by 28 U.S.C. §1961, .46%, and an

award of costs and attorney's fees, in an amount to be determined after entry of final judgment.

NOW, THEREFORE, IT IS **ORDERED, ADJUDGED AND DECREED** THAT:

1. Default judgment shall be entered in favor of Plaintiffs on Count 1, default on Dice promissory notes.

2. Plaintiff Egan is entitled to recover from Defendant Dice $55,757.40, plus interest from December 2, 2010, the date of the last principal payment, at the contractual rate of 15% per annum through the date judgment is entered in this case, plus post judgment interest thereon at the statutory rate provided by 28 U.S.C. §1961, .46%.

3. Plaintiff Heise is entitled to recover from Defendant Dice $144,297.58, plus interest from September 8, 2009, the date of the last principal payment, at the contractual rate of 15% per annum through the date judgment is entered in this case, plus post judgment interest thereon at the statutory rate provided by 28 U.S.C. §1961, .46%.

4. Plaintiffs' request for costs is GRANTED and Plaintiffs shall submit a bill of costs for the Court's review and approval.

5. Plaintiffs' requests for attorneys' fees is GRANTED and Plaintiffs shall follow the procedures outlined in USDC Local Rule 54.3.

Dated this _____ 1 st day of February, 2016.

Alan B. Johnson
United States District Judge

31